1  Adam Y. Siegel (SBN 238568)
   Adam.Siegel@jacksonlewis.com
2  Ikedi O. Onyemaobim (SBN 311221)
   Ikedi.onyemaobim@jacksonlewis.com
3  **JACKSON LEWIS P.C.**
   725 South Figueroa Street, Suite 2500
4  Los Angeles, California  90017-5408
   Telephone:   (213) 689-0404
5  Facsimile:    (213) 689-0430

6  Attorneys for Defendants
   TOTAL LONGTERM CARE, INC. and INNOVAGE CALIFORNIA PACE-INLAND
7  EMPIRE, LLC

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  CAPRICE JUSTICE WILLIAMS,                    **CASE NO.:**  5:22-cv-1180
    individually, and on behalf of all others
12  similarly situated,

13              Plaintiff,                       **NOTICE OF REMOVAL OF ACTION
                                                 TO THE UNITED STATES DISTRICT
14       vs.                                     COURT FOR THE CENTRAL
                                                 DISTRICT OF CALIFORNIA
15  TOTAL LONGTERM CARE, INC., a                 PURSUANT TO 28 U.S.C. §§ 1332,
    corporation; INNOVAGE CALIFORNIA             1441(a) AND (b) DIVERSITY**
16  PACE-INLAND EMPIRE, LLC, a limited
    liability company; and DOES 1 through 10,    (Filed concurrently with Declarations of
17  inclusive,                                   Barbara Gutierrez, Declaration of Terri
                                                 Helpenstell, Notice of Interested Parties,
18              Defendants.                      Notice of Filing of Answer in State Court
                                                 and Civil Case Cover Sheet)
19
                                                 Complaint Filed:    March 30, 2022
20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF CAPRICE JUSTICE WILLIAMS AND PLAINTIFF'S ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants TOTAL LONGTERM CARE, INC. ("Total Longterm") and INNOVAGE CALIFORNIA PACE-INLAND EMPIRE, LLC ("InnovAge") (collectively, "Defendants") hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441(a) and 1441(b), and remove the above-entitled action to this Court from the Superior Court of the State of California for the County of San Bernardino ("San Bernardino Superior Court") based on the Class Action Fairness Act of 2005 ("CAFA"). Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff CAPRICE JUSTICE WILLIAMS ("Plaintiff").

1. On April 18, 2022, Plaintiff filed a civil class action complaint against Defendants in the Superior Court of the State of California in the County of San Bernardino entitled *CAPRICE JUSTICE WILLIAMS, individually and on behalf of all other similarly situated, Plaintiff vs. TOTAL LONGTERM CARE, INC., a corporation; and INNOVAGE CALIFORNIA PACE-INLAND EMPIRE, LLC, a limited liability company; and DOES 1 through 10, inclusive, Defendants*, Case No. CIVSB2206499, which sets forth the following eight (8) causes of action: (1) Failure to Pay Minimum and Straight Time Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Periods; (5) Failure to Timely Pay Final Wages at Termination; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Indemnify Employees for Expenditures; and (8) Unfair Business Practices ("Complaint"). As stated in paragraph 22 therein, Plaintiff brought this class action on behalf of herself and various classes consisting of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice

/ / /

to the Class is sent" (collectively referred to herein as "Putative Class Members" or the "Putative Class").

2.    Defendants first received Plaintiff's Summons and Complaint and related court documents on June 18, 2022.  (Declaration of Adam Y. Siegel ("Siegel Decl.") ¶ 2.) True and correct copies of the Summons, Complaint and other related court documents received by Defendants on June 10, 2022 are attached as **Exhibits "A"** and **"B"** to the Siegel Declaration.

3.    On July 6, 2022, Defendants filed and served an Answer to the Complaint in the San Bernardino County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. (Id. ¶ 3.)  A true and correct copy of Defendants' Answer is attached as **Exhibit "C"** to the Siegel Declaration.

4.    On July 7, 2022, Defendants filed and served a Case Management Statement in the San Bernardino County Superior Court.  A true and correct copy of Defendants' Case Management Statement is attached as **Exhibit "D"** to the Siegel Declaration.

5.    As of today, **Exhibits "A"** through **"D"** to the Siegel Declaration constitute all of the pleadings received or filed by Defendants in this matter.  (Id. ¶ 6.)

6.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers promptly will be served on Plaintiff's counsel and filed with the Clerk of the San Bernardino Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

## TIMELINESS OF REMOVAL

7.    This Notice of Removal has been filed within thirty (30) days after Defendants were first served with a copy of Plaintiff's Summons and Original Complaint on June 16, 2022.  (Id. ¶ 2.)  Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b).  *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service...").

/ / /

## VENUE

8.      This action was filed in the San Bernardino Superior Court. Thus, pursuant to 28 U.S.C. § 1441(a), Defendants are removing this action to the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

9.      Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

10.      In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  28 U.S.C. § 1332 (d)(5).

11.      As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from at least one of the Defendants.  *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, none of the Defendants are a State, State official, or other governmental entity.

### A.      None Of The Named Defendants Are Government Entities.

12.      Neither Defendant is a State, a State official, nor any other governmental entity.  (Terri Helpenstell ("Helpenstell Decl.") at ¶ 5.)

### B.      Minimal Diversity Is Satisfied Under CAFA.

13.      The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which one of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship

from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14.     Citizenship of the parties is determined by their citizenship status at the action's commencement.  *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

15.     For individuals, citizenship is determined by a person's domicile.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship.  *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).  Furthermore, a person's intention to remain may be established by his or her place of employment.  *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017).

16.     Defendants are informed and believe that Plaintiff was – at the time this action was commenced – and still is "a resident of San Bernardino County, California."  (Siegel Decl. ¶ 2, **Exhibits "A"** and **"B"** ["Complaint"] at ¶ 7; Helpenstell Decl. at ¶ 3.)  Accordingly, for purposes of removal under CAFA, Plaintiff is a citizen of California.

17.     For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c).  With respect to ascertaining a corporation's principal place of business,

the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

18. At the time Plaintiff filed the Complaint and presently, Defendant Total Longterm has been a corporation organized under the laws of the State of Colorado. (Barbara Gutierrez ("Gutierrez Decl.") at ¶ 3.) At the time Plaintiff filed the Complaint, Defendant InnovAge had been dissolved as an entity as of January 2020, but was formerly a limited liability company that had been organized under the laws of the State of Delaware and had never been operated. (Id. at ¶ 4.) At all relevant times, Defendant Total Longterm's company headquarters, and thus their principal place of business, has been in the State of Colorado. (Id. at ¶ 3.) The State of Colorado is where Defendant Total Longterm's high-level officers, including its President, direct, control, and coordinate the company's activities. (Id.) Defendant Total Longterm's executive operations are managed from the State of Colorado, including, but not limited to, operations relating to administering company policies and procedures, legal affairs, and general business operations. (Id.) None of Defendant Total Longterm's executive officers reside in the State of California. (Id.) Although Defendant InnovAge is potentially a California entity, removal under CAFA requires only minimal diversity.[1] Therefore, Defendant Total Longterm's citizenship in the State of Colorado is sufficient to satisfy removal under CAFA.

/ / /

---

[1] An analysis of the principal place of business or domicile of the members of Defendant InnovAge's limited liability company is not necessary here because minimal diversity is satisfied as to Defendant Total Longterm under CAFA. 28 U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). It should also be noted that Plaintiff and the putative class were never employed by Innovage. Innovage is simply a holding company with no employees. (Helpenstell Decl. at ¶¶ 3, 4, 6-8; Gutierrez Decl. at ¶ 4.)

19.     Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant Total Longterm was – and still is – a citizen of the State Colorado.[2]  28 U.S.C. § 1332(d)(2).

## C.     The Putative Class Contains More Than 100 Members.

20.     CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

21.     Here, Defendants' records identify at least 491 individuals who are or were employed by Defendant Total Longterm as non-exempt employees in California between March 30, 2018 (four years prior to the filing of the Complaint) and the present (the "Putative Class Period").  (Helpenstell Decl.") at ¶ 7.)  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

## D.     The Amount in Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[3]

22.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or

---

[2]     The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA.  28 U.S.C. § 1441(a); *see Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

[3]     Defendants deny each and every allegation set forth by Plaintiff in the Complaint, and deny that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, restitution, civil penalties, attorneys' fees, or any other relief. Defendants also deny that this action can proceed as a class or representative action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case …. Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly ….").

23.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (citation omitted).

24.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).  Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

25.     In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted).  Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) (*quoting Dart*, 135 S. Ct. at 554). On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

26.     Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member

of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

27.   Here, without admitting Plaintiff could recover any damages whatsoever, a plausible reading of the Complaint conservatively places an aggregate amount in controversy exceeding **$6,447,902.00**, exclusive of attorneys' fees, interest, and costs, as follows:

a.   **First Cause of Action – Failure to Pay Minimum and Straight Wages:** Plaintiff alleges that: "Throughout Plaintiff's employment, Defendants failed to pay for all hours worked (including minimum, straight time, and overtime wages), failed to provide Plaintiff with legally compliant meal periods, failed to authorize and permit Plaintiff to take rest periods, failed to timely pay all wages to Plaintiff when Defendants terminated her employment, failed to furnish accurate wage statements to Plaintiff, and failed to indemnify Plaintiff for expenditures." (Complaint at ¶¶ 14, 15, 28(a), 31-40, Prayer at 4-9.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least 1 hours of minimum wage per week for all Putative Class Members, which would place over **$690,426.00** in controversy in connection with her minimum wage claim ([$11 minimum hourly wage rate[4] x 1 hours per workweek x 31,383 workweeks] plus an equal amount in liquidated damages).

b.   **Second Cause of Action – Failure to Pay Overtime Wages:** Plaintiff alleges that: "Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including . . . overtime wages."

---

[4]    For purposes of calculating potential minimum wage damages in this Notice of Removal, Defendants conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11 per hour) for all calculations.  *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/dlse/faq_minimumwage.htm).

Plaintiff further asserts that "[s]ome of this unpaid work should have been paid at the overtime rate." (Complaint at ¶¶ 15, 28(a), 41-49, Prayer at 10-14.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime per week for all Putative Class Members, which would place over **$1,069,533.00** in controversy in connection with her overtime claim ($34.08 overtime rate [$22.72 x 1.5] x 1 hour per week x 31,383 workweeks).

        c.   **Third Cause of Action – Failure to Provide Meal Periods:** Plaintiff alleges that: "Throughout the statutory period, Defendants wrongfully failed to provide Plaintiff and the Class with their legally mandated 30-minute, uninterrupted, and duty-free meal period. Defendants *regularly*, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work." (Complaint at ¶¶ 16, 28(b), 50-53, Prayer at 15-19.) Plaintiff also asserts that "Defendants continued to assert control over Plaintiff and the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods, or by denying Plaintiff and the Class permission to take a meal period." (*Id*.) Plaintiff further asserts that "Defendant also never informed Plaintiff of her right to, nor permitted her to take, a second meal period when Plaintiff worked at least ten hours of work in a workday. Accordingly, Defendants' policy and practice was not to provide meal periods to Plaintiff and the class in compliance with California law." (*Id*.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least two meal period premium per week for all Putative Class Members, which would place **$1,426,044.00** controversy in connection with her third cause of action ($22.72 hourly rate x 2 meal period penalty per week x 31,383 workweeks).

/ / /

/ / /

---

d.    **Fourth Cause of Action – Failure to Authorize and Permit Rest Periods:** Plaintiff alleges that: "Throughout the statutory period, Defendants have wrongfully failed to authorize and permit Plaintiff and the Class to take legally compliant rest periods.  Defendant *regularly* required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and the Class for rest periods that were not authorized or permitted." (Complaint at ¶¶ 17, 28(c), 54-57, Prayer at 20-24.)  Plaintiff also asserts that "Defendants continued to assert control over Plaintiff and the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiff and permission to take a rest period." (*Id*.)  Plaintiff further asserts that "Defendants' policy and practice was to not authorize and permit Plaintiff and the Class to take rest periods in compliance with California law. (*Id*.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least two rest period premium per week for all Putative Class Members, which would place **$1,426,044.00** controversy in connection with her fourth cause of action ($22.72 hourly rate x 2 rest period penalty per week x 31,383 workweeks).

e.    **Fifth Cause of Action – Failure to Timely Pay Final Wages at Termination:** Plaintiff alleges that: "Throughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiff and the Class all final wages due at their termination of employment. In addition, Plaintiff's final paychecks did not include payment for all expenditures, minimum wages, straight time wages, overtime wages, meal period premium wages, and rest period premium wages owed to her by Defendants at the conclusion of her employment." (Complaint at ¶¶ 18, 28(d), 58-64, Prayer at 25-29.) Plaintiff further asserts that "Defendants' failure to timely pay Plaintiff's final wages when her employment terminated was not a single, isolated incident, but was instead consistent with Defendants' policy and practice that applied to Plaintiff and the Class." (*Id*.)  During

the applicable three-year statute of limitations period, at least 222 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. (Helpenstell Decl. at ¶ 7.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$1,210,522.00** in controversy in connection with her claim for failure to pay final wages at termination (222 Putative Class Members x $22.72 hourly rate x 8 hours x 30 days).

f.     **Sixth Cause of Action – Failure to Provide Accurate Itemized Wage Statements:** Plaintiff alleges that: "Throughout the statutory period, Defendants willfully failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted tot ake in accordance with California law)." (Complaint at ¶¶ 19, 28(e), 65-72, Prayer at 30-35.) Plaintiff further asserts that "[she] and the Class are owed the amounts provided for in California Labor Code § 226(e) and injunctive relief under California Labor Code § 226(h)." (*Id.*)

g.     California Labor Code section 226(e)(1) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

h.     Based on a review of Defendant's payroll records, there are at least 6,258 pay periods applicable to the Class Members during the one-year statute of limitations period under Labor Code section 226 (i.e., March 30, 2021 to the present). Thus, based on the allegations in the Complaint is plausible that Plaintiff has placed over

**$593,950.00** in controversy in connection with her wage statement claim ($50 per first wage statement x 331 Putative Class Members who worked between March 30, 2021 and June 16, 2022, plus $100 per each subsequent wage statement x 5,926 pay periods worked by Putative Class Members between March 30, 2021 and June 16, 2022, up to a maximum of $4,000 per Putative Class Member).   Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

       i.   **Seventh Cause of Action – Failure to Indemnify Employees for Expenditures:** Plaintiff alleges that: "Throughout the statutory period, Defendants have wrongfully required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants."  (Complaint at ¶¶ 20, 28(f), 73-77, Prayer at 36-40.)  Plaintiff further asserts that "[she] and the Class regularly paid out-of-pocket for necessary employment-related expenses in the form of work attire and use of personal cell phones."  (*Id.*)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover an average of at least $1.00 per week for all Putative Class Members, which would place **$31,383.00** in controversy in connection with her failure to indemnify for expenditures claim ($1.00 per week x 31,383 workweeks).

       j.   **Plaintiff's Alleged Attorneys' Fees**

    28.   Plaintiff also seeks an unspecified amount of attorneys' fees in his Complaint, which the Court should consider and include in the amount in controversy.  (Seigel Decl. ¶ 2,

**Exhibits "A"** and **"B,"** Complaint Prayer at 8, 13, 18, 23, 28, 34, 39, 44.)  *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998).  Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more.  *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties).  Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, 2018 U.S. Dist. LEXIS 78510, at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

29.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also, e.g., Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee

award of 25% of the value of certain of the substantive claims."); *Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available.").

30.    The Court should therefore consider attorneys' fees of at least **$1,611,976.00**, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above. *See, e.g., Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

31.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (**$8,059,878.00**) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

| | |
|---|---|
| First Cause of Action: Failure to Pay Minimum and Straight Wages | $690,426.00 |
| Second Cause of Action: Failure to Pay Overtime Wages | $1,069,533.00 |
| Third Cause of Action: Failure to Provide Meal Periods | $1,426,044.00 |

| | |
|---|---|
| Fourth Cause of Action: Failure to Authorize and Permit Rest Periods | $1,426,044.00 |
| Fifth Cause of Action: Failure to Timely Pay Final Wages at Termination | $1,210,522.00 |
| Sixth Cause of Action: Failure to Provide Accurate Itemized Wage Statements | $593,950.00 |
| Seventh Cause of Action: Failure to Indemnify Employees for Expenditures | $31,383.00 |
| Attorneys' Fees | $1,611,976.00 |
| **Minimum Amount-In-Controversy:** | $8,059,878.00 |

## NOTICE TO ALL PARTIES AND STATE COURT

32.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Bernardino County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

Based on the foregoing, Defendants hereby remove the above-captioned action from the Santa Barbara Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully request that this Court retain jurisdiction for all further proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    WHEREFORE, Defendant prays the above action now pending against it in the San
2  Bernardino County Superior Court be removed to this Court.
3
4  Dated  July 8, 2022                        **JACKSON LEWIS P.C.**
5
6                                        By    /s/ Adam Y. Siegel
                                             _____
7                                            Adam Y. Siegel
                                             Ikedi O. Onyemaobim
8
9                                            Attorneys for Defendants
10                                           TOTAL LONGTERM CARE, INC. and
                                             INNOVAGE CALIFORNIA PACE-
11                                           INLAND EMPIRE, LLC
12  4895-6329-6807, v. 1
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28